**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| YOCHANAN MARKMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>WHOLE FOODS MARKET, INC., JOHN P. MACKEY, WALTER E. ROBB III, and GLENDA JANE FLANAGAN,<br><br>Defendants. | **Case No.: 1-15-cv-00681-LY**<br><br>**CLASS ACTION**<br><br>**AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Yochanan Markman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his amended complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Whole Foods Market, Inc. ("Whole Foods" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of Whole Foods securities between August 9, 2013 and July 30, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Whole Foods operates as a retailer of natural and organic foods. The Company's stores offer produce and floral, grocery, meat, seafood, bakery, prepared foods and catering, coffee, tea, beer, wine, cheese, nutritional supplements, vitamins, and body care products, as well as lifestyle products, including books, pet products, and household products. As of May 7, 2015, the company had approximately 417 stores worldwide.

3. Whole Foods was founded in 1978 and is headquartered in Austin, Texas. Its shares trade on the NASDAQ under the ticker symbol "WFM."

4. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company routinely overstated the weight of its pre-packaged products and overcharged customers; and (ii) as a result of the foregoing, Defendants' statements about Whole Foods's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

5. On June 25, 2015, the New York City Department of Consumer Affairs ("NYCDA") announced it had uncovered "systematic overcharging for pre-packaged foods" at Whole Foods' eight New York City locations. On a survey of 80 different types of prepackaged products, NYCDA reported that it had found thousands of potential overcharging violations. In response, the Company stated that there was no evidence of overcharging and responded that it

would vigorously defend itself against what it described as "overreaching allegations" by NYCDA. On this news, Whole Food stock fell $0.19, or 0.47%, to close at $40.57 on June 23, 2015.

6. On July 29, 2015, post-market, the Company issued a press release and filed a Form 8-K with the SEC announcing its financial and operating results for the quarter ended July 5, 2015 (the "July 2015 8-K"). For the quarter, net income was $154 million, or $0.43 per diluted share, on revenue of $3.63 billion, compared to net income of $151 million, or $0.41 per diluted share, on revenue of $3.38 billion for the same period in the prior year. Reporting store sales growth of 0.6% for the last two weeks of the quarter, the July 2015 8-K stated, in part, that "[w]eights and measures audit in New York City stores garnered national media attention."

7. Also on July 29, 2015, post-market, Whole Foods hosted an earnings call to discuss the financial and operating results reported in the July 2015 8-K. During the call, the Individual Defendants directly attributed Whole Foods lower-than-expected quarterly results to news that the Company had overcharged its customers:

> [Analyst]: . . . [W]hen you look at the slowdown over the past five weeks, I guess, how can you guys be so precise that the New York audit is the primary factor? And I guess, more importantly, what steps are you taking to fix the problem given that it seems like it's bled into the first few weeks here of the fourth quarter?
>
> Walter Robb – Co-Chief Executive Officer & Director: . . . Well, again, I think in the comments here, we said that we – look, we try to give you the evidence in the chart there that showed the breakdown of the quarter, the weeks and the quarter, the end of the quarter, the start of the quarter, and the start of the new quarter to help you get some visibility into the impact of it. Clearly, it affected the comps. Clearly, there's other factors that work here too in terms of the headwinds from the previous year strong sales and so forth. ***But by any measure, it has significant impact on our sales.***
>
> [Analyst]: Has the New York City store started to bounce back at all or are you still facing the pressures?

> Robb: We're not – I mean we're not really providing that level of detail as to the sales at this point, but I would say that – yeah, Glenda, maybe you want to...
>
> Glenda Flanagan – Chief Financial Officer & Executive Vice President: ***Well, I just want to say that the impact was really felt across the whole country, not in New York City. This was national news.*** So, looking at what's happening in the New York market is really not the right way to look at it. It's looking at it across the whole company and you can see that for the first three weeks in Q4, although we've seen a little bit of uptick from there, it's still pretty low.
>
> . . .
>
> [Analyst]: I guess I would like to follow on [the previous] questions. The question isn't just how you get your people to do the right thing, because clearly you've done that. The question is how do you change customer perception that somehow Whole Foods can't be trusted?
>
> [Robb]: Yeah, I mean I think that's a really fair question, Meredith. And then there's no – we're taking all the steps you can trust, has to be a trust is broken, it has to be rebuilt a step at a time and through solid, solid execution day in and day out. ***And there's no magic bullet for restoring whatever trust was lost*** . . . .

8. On this adverse news, Whole Foods' common stock fell $4.74 per share, or 11.61%, to close at $36.08 on July 30, 2015.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Whole Foods common stock during the Class Period, and suffered damages as a result of the federal securities law violations and the revelation of the alleged corrective disclosures.

15. Defendant Whole Foods is a Texas corporation with its principal executive offices located at 550 Bowie Street, Austin, Texas 78703. Whole Foods's common stock trades on the NASDAQ under the ticker symbol "WFM."

16. Defendant John P. Mackey ("Mackey") is, and was at all relevant times, Co-Chief Executive Officer and Director of Whole Foods.

17. Defendant Walter E. Robb, III ("Robb") is, and was at all relevant times, Co-Chief Executive Officer and Director of Whole Foods.

18. Defendant Glenda Jane Flanagan ("Flanagan") is, and was at all relevant times, Chief Financial Officer, Executive Vice President and Secretary of Whole Foods.

19. The defendants referenced above in ¶¶ 15-17 are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20. Whole Foods operates as a retailer of natural and organic foods. The Company's stores offer produce and floral, grocery, meat, seafood, bakery, prepared foods and catering, coffee, tea, beer, wine, cheese, nutritional supplements, vitamins, and body care products, as well as lifestyle products, including books, pet products, and household products. As of May 7, 2015, the company had approximately 417 stores worldwide.

21. Whole Foods was founded in 1978 and is headquartered in Austin, Texas. Its shares trade on the NASDAQ under the ticker symbol "WFM."

### Materially False and Misleading Statements Issued During the Class Period

22. The Class Period begins on August 9, 2013, when Whole Foods filed a quarterly report on Form 10-Q with the SEC announcing its financial and operating results for the quarter ended July 7, 2013 (the "July 2013 10-Q"). For the quarter, net income was $142 million, or $0.38 per diluted share, on revenue of $3.06 billion, compared to net income of $117 million, or $0.16 per diluted share, on revenue of $2.73 billion for the same period in the prior year. The July 2013 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the July 2013 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23. On November 22, 2013, Whole Foods filed an annual report on Form 10-K with the SEC announcing its financial and operating results for the quarter and fiscal year ended

September 29, 2013 (the "2013 10-K"). For the quarter, net income was $121 million, or $0.32 per diluted share, on revenue of $2.98 billion, compared to a net income of $112.73 million, or $0.30 per diluted share, on revenue of $2.91 billion for the same period in the prior year. For the fiscal year, net income was $551 million, or $1.47 per diluted share, on revenue of $12.9 billion, compared to net income of $465.57 million, or $1.26 per diluted share, on revenue of $11.7 billion for the prior fiscal year. In addition, the 2013 10-K contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. In the 2013 10-K, the Company stated, in part:

> *Value Programs*
> We remain committed to the highest quality standards and to providing a clear range of choices in every category, both of which we believe are important in driving our sales growth over the long term. In addition to offering our 365 Everyday Value brands, we have competitively matched prices on thousands of known value items, extended value choices to our perishables departments, promoted our regional and national one-day sales, and focused on improving customer awareness about the value we offer in our stores. We also have The Whole Deal, our printed value guide, available in all our stores in the U.S. and Canada, as well as online. The value guide features supplier-sponsored and Whole Foods Market store brand coupons, budget-conscious recipes, money-saving shopping and cooking tips, and Sure Deals that highlight everyday value pricing on high-quality products our customers love.
> . . .
> **Global Responsibility**
> We seek to be a deeply responsible company in the communities where we do business around the world, providing ethically sourced, high-quality products and transparent information to our customers, reducing our impact on the environment, and actively participating in our local communities.
> . . .
> *Adverse publicity may reduce our brand value and negatively impact our business.*
> We believe our Company has built an excellent reputation as a food retailer, socially responsible corporation and employer, and we believe our continued success depends on our ability to preserve, grow and leverage the value of our brand. Brand value is based in large part on perceptions of subjective qualities,

> and even isolated incidents can erode trust and confidence, particularly if they result in adverse publicity, governmental investigations or litigation, which can negatively impact these perceptions and our business. In addition, our brand and reputation could be harmed by actions taken by our suppliers that are outside of our control.

25. On February 12, 2014, Whole Foods issued a press release and filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended January 19, 2014 (the "January 2014 8-K"). For the quarter, net income was $158 million, or $0.42 per diluted share, on revenue of $4.24 billion, compared to net income of $146 million, or $0.39 per diluted share, on revenue of $3.86 billion for the same period in the prior year.

26. On February 21, 2014, Whole Foods filed a quarterly report on Form 10-Q (the "January 2014 10-Q"). The January 2014 10-Q reiterated the financial and operating results previously announced in the February 2014 8-K. In addition, the January 2014 10-Q contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the January 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. On May 6, 2014, Whole Foods issued a press release and filed a report on Form 8-K Q with the SEC announcing its financial and operating results for the quarter ended January 19, 2014 (the "April 2014 8-K"). For the quarter, net income was $142 million, or $0.38 per diluted share, on revenue of $3.32 billion, compared to net income of $142 million, or $0.38 per diluted share, on revenue of $3.03 billion for the same period in the prior year.

28. On May 16, 2014, Whole Foods filed a quarterly report on Form 10-Q with the SEC (the "April 2014 10-Q"). The April 2014 10-Q reiterated the financial and operating results previously announced in the April 2014 8-K. In addition, the April 2014 10-Q contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the

financial information contained in the April 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29. On July 30, 2014, Whole Foods issued a press release and filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended July 6, 2014 (the "July 2014 8-K"). For the quarter, net income was $151 million, or $0.41 per diluted share, on revenue of $3.38 billion, compared to net income of $142 million, or $0.38 per diluted share, on revenue of $3.06 billion for the same period in the prior year.

30. On August 8, 2014, Whole Foods filed a quarterly report on Form 10-Q with the SEC (the "July 2014 10-Q"). The July 2014 10-Q reiterated the financial and operating results previously announced in the July 2014 8-K. In addition, the July 2014 10-Q contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the July 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31. On November 5, 2014, Whole Foods issued a press release and filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended September 28, 2014 (the "September 2014 8-K"). For the quarter, net income was $128 million, or $0.35 per diluted share, on revenue of $3.26 billion, compared to net income of $121 million, or $0.32 per diluted share, on revenue of $2.98 billion for the same period in the prior year.

32. On November 21, 2014, Whole Foods filed an annual report on Form 10-K (the "2014 10-K"). The 2014 10-K reiterated the quarterly financial and operating results previously announced in the September 2014 8-K and announced the Company's financial and operating results for the fiscal year ended September 28, 2014. For the fiscal year, net income was $579 million, or $1.56 per diluted share, on revenue of $14.2 billion, compared to net income of $551

million, or $1.47 per diluted share, on revenue of $12.9 billion for the prior fiscal year. In addition, the 2014 10-K contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33. In the 2014 10-K, the Company stated, in part:

> **Value Programs**
> We remain committed to the highest quality standards and to providing a clear range of choices in every category, both of which are important drivers of sales growth over the long term. In addition to our 365 Everyday Value exclusive products, we competitively price thousands of branded items and have extended value choices to our perishables departments as well. We also regularly promote thousands of products each month, including the widest array of organic and non-GMO sale items available. Our website features budget-friendly recipes and money-saving tips, and we offer in-store value tours and The Whole Deal value guide, which features supplier-sponsored and Whole Foods Market exclusive brand coupons online and in all stores in the U.S. and Canada.
>
> . . .
>
> **Global Responsibility**
> We seek to be a deeply responsible company in the communities where we do business around the world, providing ethically sourced, high-quality products and transparent information to our customers, reducing our impact on the environment, and actively participating in our local communities.
>
> . . .
>
> *Adverse publicity may reduce our brand value and negatively impact our business.*
>
> We believe our Company has built an excellent reputation as a food retailer, socially responsible corporation and employer, and we believe our continued success depends on our ability to preserve, grow and leverage the value of our brand. Brand value is based in large part on perceptions of subjective qualities, and even isolated incidents can erode trust and confidence, particularly if they result in adverse publicity, governmental investigations or litigation, which can negatively impact these perceptions and our business. We believe that many customers choose to shop our stores because of their interest in health, nutrition and food safety and that they hold us to a higher food safety standard than other supermarkets. There is increasing governmental scrutiny of and public awareness regarding food safety. The real or perceived sale of contaminated food products by us could result in government enforcement action, private litigation, product recalls and other liabilities, the settlement or outcome of which might have a material adverse effect on our operating results and brand value.

34. On February 11, 2015, Whole Foods issued a press release and filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended January 18, 2015 (the "January 2015 8-K"). For the quarter, net income was $167 million, or $0.46 per diluted share, on revenue of $4.67 billion, compared to a net income of $158 million, or $0.42 per diluted share, on revenue of $4.24 billion for the same period in the prior year.

35. On February 27, 2015, Whole Foods filed a quarterly report on Form 10-Q with the SEC (the "January 2015 10-Q"). The January 2015 10-Q reiterated the financial and operating results previously announced in the January 2015 8-K. In addition, the January 2015 10-Q contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the January 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36. On May 6, 2015, Whole Foods issued a press release and filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended April 12, 2015 (the "April 2015 8-K"). For the quarter, net income was $158 million, or $0.44 per diluted share, on revenue of $3.65 billion, compared to net income of $142 million, or $0.38 per diluted share, on revenue of $3.32 billion for the same period in the prior year.

37. On May 12, 2015, Whole Foods filed a quarterly report on Form 10-Q (the "April 2015 10-Q"). The April 2015 10-Q reiterated the financial and operating results previously announced in the April 2015 8-K. In addition, the April 2015 10-Q contained signed certifications pursuant to SOX by defendants Mackey, Robb and Flanagan, stating that the financial information contained in the April 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38. The statements referenced in ¶¶ 22 – 37 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly guarded by them, including that: (i) the Company routinely overstated the weight of its pre-packaged products and overcharged customers; and (ii) as a result of the foregoing, Defendants' statements about Whole Foods's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

39. On June 25, 2015, NYCDA announced it had uncovered "systematic overcharging for pre-packaged foods" at Whole Foods' eight New York City locations. On a survey of 80 different types of prepackaged products, NYCDA reported that it had found thousands of potential overcharging violations. In response, the Company stated that there was no evidence of overcharging and responded that it would vigorously defend itself against what it described as "overreaching allegations" by NYCDA. On this news, Whole Food stock fell $0.19, or 0.47%, to close at $40.57 on June 23, 2015.

40. On July 29, 2015, post-market, the Company filed its July 2015 8-K, announcing its financial and operating results for the quarter ended July 5, 2015. For the quarter, net income was $154 million, or $0.43 per diluted share, on revenue of $3.63 billion, compared to net income of $151 million, or $0.41 per diluted share, on revenue of $3.38 billion for the same period in the prior year. Reporting store sales growth of 0.6% for the last two weeks of the quarter, the July 2015 8-K stated, in part, that "[w]eights and measures audit in New York City stores garnered national media attention."

41. Also on July 29, 2015, post-market, Whole Foods hosted an earnings call to discuss the financial and operating results reported in the July 2015 8-K. During the call, the

Individual Defendants directly attributed Whole Foods lower-than-expected quarterly results to news that the Company had overcharged its customers:

> [Analyst]: . . . [W]hen you look at the slowdown over the past five weeks, I guess, how can you guys be so precise that the New York audit is the primary factor? And I guess, more importantly, what steps are you taking to fix the problem given that it seems like it's bled into the first few weeks here of the fourth quarter?
>
> Walter Robb – Co-Chief Executive Officer & Director: . . . Well, again, I think in the comments here, we said that we – look, we try to give you the evidence in the chart there that showed the breakdown of the quarter, the weeks and the quarter, the end of the quarter, the start of the quarter, and the start of the new quarter to help you get some visibility into the impact of it. Clearly, it affected the comps. Clearly, there's other factors that work here too in terms of the headwinds from the previous year strong sales and so forth. ***But by any measure, it has significant impact on our sales.***
>
> [Analyst]: Has the New York City store started to bounce back at all or are you still facing the pressures?
>
> Robb: We're not – I mean we're not really providing that level of detail as to the sales at this point, but I would say that – yeah, Glenda, maybe you want to...
>
> Glenda Flanagan – Chief Financial Officer & Executive Vice President: ***Well, I just want to say that the impact was really felt across the whole country, not in New York City. This was national news.*** So, looking at what's happening in the New York market is really not the right way to look at it. It's looking at it across the whole company and you can see that for the first three weeks in Q4, although we've seen a little bit of uptick from there, it's still pretty low.
>
> . . .
>
> [Analyst]: I guess I would like to follow on [the previous] questions. The question isn't just how you get your people to do the right thing, because clearly you've done that. The question is how do you change customer perception that somehow Whole Foods can't be trusted?
>
> [Robb]: Yeah, I mean I think that's a really fair question, Meredith. And then there's no – we're taking all the steps you can trust, has to be a trust is broken, it has to be rebuilt a step at a time and through solid, solid execution day in and day out. ***And there's no magic bullet for restoring whatever trust was lost*** . . . .

42. On this adverse news, Whole Foods' common stock fell $4.74 per share, or 11.61%, to close at $36.08 on July 30, 2015.

43. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Whole Foods securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Whole Foods securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Whole Foods or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Whole Foods;
- whether the Individual Defendants caused Whole Foods to issue false and misleading financial statements during the Class Period;
- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Whole Foods securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Whole Foods securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Whole Foods securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Whole Foods securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Whole Foods securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

56. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Whole Foods securities. Such reports, filings, releases and statements

were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Whole Foods's finances and business prospects.

57. By virtue of their positions at Whole Foods, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Whole Foods securities from their personal portfolios.

59. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Whole Foods, the Individual Defendants had knowledge of the details of Whole Foods's internal affairs.

60. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Whole Foods. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to

Whole Foods's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Whole Foods securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Whole Foods's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Whole Foods securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

61. During the Class Period, Whole Foods securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Whole Foods securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Whole Foods securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Whole Foods securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

62. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

64. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. During the Class Period, the Individual Defendants participated in the operation and management of Whole Foods, and conducted and participated, directly and indirectly, in the conduct of Whole Foods's business affairs. Because of their senior positions, they knew the adverse non-public information about Whole Foods's business practices.

66. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Whole Foods's financial condition and results of operations, and to correct promptly any public statements issued by Whole Foods which had become materially false or misleading.

67. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Whole Foods disseminated in the marketplace during the Class Period concerning Whole Foods's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Whole Foods to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling

persons" of Whole Foods within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Whole Foods securities.

68. Each of the Individual Defendants, therefore, acted as a controlling person of Whole Foods. By reason of their senior management positions and/or being directors of Whole Foods, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Whole Foods to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Whole Foods and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

69. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Whole Foods.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 7, 2015

**Respectfully Submitted**

**ABRAHAM, WATKINS, NICHOLS,**
**SORRELS, AGOSTO & FRIEND**

By: *<u>/s/ Sammy Ford IV</u>*
Sammy Ford IV
Federal Bar Number: 950682
Texas Bar Number: 24061331
800 Commerce Street
Houston, TX 77002
Telephone: 713-222-7211
Facsimile: 713-225-0827

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**Attorneys for Plaintiff**